UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                  :

DENNIS MCCONKEY,                :

                       :

              Plaintiff,       :

                       :          24-cv-06091 (LJL)

       -v-                 :

                       :      MEMORANDUM AND

THE CHURCHILL SCHOOL AND CENTER,  :        ORDER

                       :

              Defendant.    :

                       :

------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__7/14/2025__

LEWIS J. LIMAN, United States District Judge:

      Plaintiff Dennis McConkey ("McConkey" or "Plaintiff") moves, pursuant to Federal

Rule of Civil Procedure 37, for an order compelling the production of documents from

Defendant The Churchill School and Center ("Churchill" or "Defendant"), the running of certain

searches, and for the inspection of premises.  Dkt. No. 27.  For the following reasons, Plaintiff's

motion is granted in part and denied in part.

## I.    **Improper redactions.**

      McConkey complains that Defendant has improperly applied redactions to documents

produced in this matter, including the names of his former co-workers, on grounds of privacy

rather than on privilege.  Dkt. No. 28 at 1.  Defendant argues that such redactions are improper

given the protective order in this matter.  *Id.*  Defendant responds that it has redacted only the

names and contact information of nonparty employees whose identities are not relevant to any

claim or defense in this matter and has done so to protect the legitimate privacy interests of those

who are not alleged to have engaged in any wrongdoing and who have no meaningful connection

to the issues in the case.  Dkt. No. 28 at 1.  McConkey has the better of the argument.

"In this Circuit, the weight of authority goes against allowing a party to redact information from admittedly responsive and relevant documents based on that party's unilateral determinations of relevancy." *Trireme Energy Holdings, Inc. v. Innogy Renewables US LLC*, 2022 WL 621957, at *2 (S.D.N.Y. Mar. 3, 2022) (quoting *Christine Asia Co. v. Alibaba Grp. Holding Ltd.*, 327 F.R.D. 52, 54 (S.D.N.Y. 2018) (collecting cases)) (cleaned up); *see Cyris Jewels v. Casner*, 2016 WL 2962203, at *4 (E.D.N.Y. May 20, 2016). This stands to reason:

> That redactions based on relevancy are impermissible makes sense. First, there is no Federal Rule of Civil Procedure that permits it. Second, documents do not exist in a perfect world of relevance and irrelevance. The same document can contain relevant and irrelevant information. The redaction of the "irrelevant" information creates a perfect black box. No one knows what's in it. That would then require the parties and the courts to review every document from which a redaction has been made. But, the worse that can happen, if there is no redaction, is that the opposing party and counsel will see irrelevant information. There is a significant disproportion between the nature of that harm (if there is any) prevented by the redaction and the effort then demanded of all counsel and the court to determine the redaction's legitimacy.

*In re Marriott Int'l Customer Data Sec. Breach Litig.*, 2020 WL 5525043, at *2 (D. Md. Sept. 14, 2020); *see Bartholomew v. Avalon Cap. Grp., Inc.*, 278 F.R.D. 441, 452 (D. Minn. 2011); *see also In re: Medeva Sec. Litig.*, 1995 WL 943468 (C.D. Cal. 1995) (observing that problems created by redaction outweigh "minimal" harm done by "disclosure of some irrelevant material"). "Similarly, unilateral redactions based on concerns about personal privacy or business sensitivity are routinely disallowed, particularly where a protective order is in place allowing the parties to designate that information 'confidential' and restrict its use." *Trireme Energy*, 2022 WL 621957, at *2. A court may permit redactions of personal data such as contact information on "a finding of 'good cause' based on a need 'to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *Howell v. City of New York*, 2007 WL 2815738, at *2 (E.D.N.Y. Sept. 25, 2007) (quoting Fed. R. Civ. P. 26(c)(1)). However, "[t]o establish good cause under Rule 26(c), courts require a particular and specific

demonstration of fact, as distinguished from stereotyped and conclusory statements." *Rep. of Turk. v. Christie's, Inc*., 312 F. Supp. 3d 385, 388 (S.D.N.Y. 2018).

Defendant's unilateral redactions for relevance are accordingly impermissible. A protective order is in place in this case. Dkt. No. 23. Furthermore, the identities of individuals who are copied on the produced communications may be relevant even if they are nonparties "not alleged to have engaged in any wrongdoing and whose identities bear no meaningful connection to the issues in this case." *See* Dkt. No. 28 at 1. Knowledge of those individuals may help provide context for the communication or may suggest avenues of investigation for Plaintiff. The same is true with respect to the names of the employees in the documents relating to the age composition of Defendant's employees. The identities of those individuals may be relevant when combined with Plaintiff's knowledge of the circumstances of those individuals' employment or tenure in the school, whether they are above or below the age of forty. Finally, Defendant has not met its burden of showing that the privacy interests of those individuals cannot be sufficiently protected by the protective order already issued in this matter. Defendant may redact only the contact information for those individuals.[1]

## II.    Student files

McConkey argues that Defendant should be required to produce documents in the student files for students involved in the October 2022 bathroom incident that allegedly led to his firing. Dkt. No. 27 at 2. McConkey claims that documents concerning the records of the students, including any disciplinary actions taken against them is relevant to their credibility in their accusations against Plaintiff. *Id.* Defends argue that McConkey has not met the heightened relevancy requirement for disclosure of student records under Family Educational Rights and

---

[1] If the contact information is relevant, McConkey may request it through interrogatories.

3

Privacy Act ("FERPA"), 20 U.S.C. § 1232(g), because the students are nonparties and Plaintiff

has alleged no discriminatory motive on their part.  Dkt. No. 28.

"[A] party seeking disclosure of education records protected by FERPA bears 'a

significantly heavier burden . . . to justify disclosure than exists with respect to discovery of

other kinds of information, such as business records." *Ragusa v. Malverne Union Free Sch.*

*Dist.*, 549 F. Supp. 2d 288, 292 (E.D.N.Y. 2008) (quoting *Rios v. Read*, 73 F.R.D. 589, 598

(E.D.N.Y.1977)).  "A plaintiff will generally satisfy this burden where it is shown that the

requested student records are needed to support the claims underlying the litigation." *Doe v.*

*Princeton Univ.*, 2024 WL 1375948, at *5 (D.N.J. Apr. 1, 2024) (collecting cases); *see, e.g.,*

*Hashem v. Hunterdon County*, 2018 WL 2337145, at *11-12 (D.N.J. May 23, 2018) (granting

production of student records where the names of students and parents "were essential" and

without the same, the plaintiff could not "evaluate the evidence in the context of the claims and

defenses in [the] lawsuit.").

McConkey has not met this higher threshold of relevance with respect to the students'

files.  First, "although the credibility of a witness (whether or not a party) is always relevant, in a

broad sense, to the parties' claims and defenses, courts have historically been wary of discovery

sought solely for impeachment purposes." *Shih v. Petal Card, Inc.*, 2021 WL 5279395, at *4

(S.D.N.Y. Nov. 12, 2021).  "[W]hile impeachment discovery may be relevant, there must be

some limit to the general purposes of establishing credibility and gathering information for

impeachment. . . . If not, a party's effort to seek impeachment material would justify nearly

unlimited discovery with respect to every witness or party in every case, . . . thereby vitiating the

proportionality requirement." *Securities and Exchange Comm'n v. Collector's Coffee Inc.*, 338

F.R.D. 309 (S.D.N.Y. 2021) (internal citations and quotations omitted).

In this instance, the students' credibility is particularly far removed from the zone of proportionality and relevance because the question in this case is not whether the bathroom incident happened in the way the students recounted but what the students recounted to the school administrators and whether the school administrators believed the students' account of what happened, or merely used the incident as pretext for their discriminatory and/or retaliatory termination decision. *See Bamba v. United States Dep't of Homeland Sec.*, 2024 WL 3924810, at *25 (S.D.N.Y. Aug. 23, 2024); *Oluyomi v. Napolitano*, 811 F. Supp. 2d 926 (S.D.N.Y. 2011) ("[T]he issue to be proven in a discrimination case is whether there was an improper motive for the employment decision—not whether any conduct relied upon by the employer actually occurred."), *aff'd,* 481 F. App'x 693 (2d Cir. 2012). The issue is not whether the misconduct actually occurred but whether the perceived misconduct "is the true ground of the employer's action rather than being a pretext for a decision based on some other, undisclosed ground." *Forrester v. Rauland–Borg Corp.,* 453 F.3d 416, 417 (7th Cir.2006); *see Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 496 (D.C. Cir. 2008) ("[T]he question is not whether the underlying sexual harassment incident occurred; rather, the issue is whether the employer honestly and reasonably believed that the underlying sexual harassment incident occurred.").

McConkey has not shown that the students' files are needed to support his claims and thus has not shown that his interest in the files is greater than the important privacy interests of the students in their confidential records.

## III.    Discipline imposed by Jason Wallin

McConkey seeks documents concerning Jason Wallin disciplining a male student in fall 2022 for violating the Defendant's dress code for wearing a tank top. Dkt. No. 27 at 2. McConkey claims that the documents are relevant to whether Wallin exhibited bias towards LBGTQ students and thus to whether he discriminated against Plaintiff. *Id.* Defendant argues

that discipline imposed on a student for a dress code violation does not bear any material connection to Plaintiff's claims of employment discrimination or retaliation and that students are, in any event, not similarly situated to teachers for the purposes of evaluating discriminatory animus. Dkt. No. 28 at 2.

The complaint alleges that in the fall of 2022, Wallin disciplined an openly gay male student for violating the dress code for wearing a tank top without disciplining the two female students with whom he was standing for also wearing tank tops. Dkt. No. 1 ¶ 33. McConkey argues that documents regarding the incident are probative of Wallin's anti-gay bias and therefore are probative of whether Wallin was motivated by anti-gay bias when McConkey's employment was terminated. Dkt. No. 27 at 2. In essence, Plaintiff argues that because Wallin treated the male student differently than the female students in imposing discipline for wearing a tank top, he likely treated McConkey differently than similarly-situated teachers because of McConkey's sexual preferences. Defendant argues that the request improperly intrudes upon the protected privacy rights of students under FERPA and fails to meet the high burden for disclosure of such records, reasoning that students are differently situated than faculty members and that accordingly the alleged disparate treatment of a student does not bear on the lawfulness of the employment action taken against Plaintiff. Dkt. No. 28 at 2.

Evidence that Wallin had made a homophobic remark directed to a student or engaged in discrimination against a student because of the student's sexual preferences could give rise to an inference that the decision against Wallin was the product of discrimination on the basis of sexual preference. *See Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) (holding that an inference of discrimination can arise from employer's invidious comments about others in the employee's protected group or the more favorable treatment of employees not in the

protected group).  Likewise, evidence of complaints by persons other than the plaintiff involving

"the same type of conduct about which the plaintiff complains" may be discoverable if it

involves the same alleged wrongdoer.  *Delancey v. Wells*, 2025 WL 1009415, at *4 (S.D.N.Y.

Apr. 4, 2025); *see also Harris v. Bronx Parent Housing Network, Inc.*, 2020 WL 763740, at *3

(S.D.N.Y. Feb. 14, 2020) ("Other claims of discrimination against a defendants are discoverable

if limited to the same form of discrimination").  However, McConkey's request here is not

limited to claims of discrimination.  Plaintiff seeks documents regarding an entirely different

incident, involving a person in an entirely different age group and an entirely different position

within the school for the purpose of demonstrating that that person was the victim of

discrimination and therefore that Plaintiff was the victim of discrimination.  McConkey does not

suggest that any homophobic remarks were made in the course of this disciplinary action, nor

that the student in question reported experiencing the action as homophobic.  The conduct is too

far attenuated from the allegations in this case.  The request opens up a fishing expedition on

issues bearing only a peripheral relationship to those here and are disproportionate to the needs

of the case.  *Cf. Vuona v. Merrill Lynch & Co., Inc.*, 2011 WL 5553709, at *7 (S.D.N.Y. Nov.

15, 2011) (denying request for complaints of discrimination on basis of different protected

characteristic because of disproportionate burden it would place on defendant).  Because neither

side disputes that the records of this incident are FERPA-protected, the same heightened

threshold described above is required to overcome the student's privacy interests.  McConkey

has not demonstrated a "genuine need for the information [which] outweighs the privacy

interests of the student[]."  *Ragusa*, 549 F. Supp. at 292.  The request is denied except to the

extent that Defendant shall be ordered to produce any complaints by students, including the

student at issue here, against Wallin concerning sex discrimination, including sexual-orientation discrimination.

**IV.    Personnel records of Wallin, Robert Siebert, and Madigan**

McConkey argues that the personnel files of Wallin, Siebert, and Madigan are relevant because they may contain information concerning complaints of discrimination and retaliation against them, and also may show that Defendant did not adequately record complaints of discrimination and retaliation or hold those individuals accountable  Dkt. No. 27 at 2.

McConkey's request is overbroad.  *See Henry v. Morgan's Hotel Grp., Inc.*, 2016 WL 303114, at *2 (S.D.N.Y. Jan. 26, 2016) (quashing subpoena that was merely a fishing expedition as overbroad).  Personnel files frequently contain "information about employee benefits, medical leaves of absence, and dependents" that bear no relevance to the claims in this case.  *Delancey*, 2025 WL 1009415, at *5.  Defendants represent that they have already searched for documents "concerning any complaints, inquiries, demands, claims, grievances, concerns, or protests, whether formal or informal, made against Churchill by a Churchill employee concerning sex discrimination, including sexual-orientation discrimination, age discrimination, and/or retaliation," and concluded that no such documents exist.  Dkt. No. 28 at 2.  Defendants shall produce the following documents from the personnel files of Wallin, Siebert, and Madigan to the extent that they exist: evidence of any complaints against Wallin, Siebert, and Madigan concerning discrimination or retaliation on the basis of age or sex, including sexual orientation, any discipline contemplated or imposed "for violation of fair employment practices policies, performance criticism or performance reviews touching on their compliance with fair employment practices policies, management of employees, leadership and communication skills, training received on fair employments practices/anti-harassment policies, pay raises or bonuses after receipt of any complaints [of sex or age discrimination or retaliation] and/or discipline or

8

poor performance reviews." *Delancey*, 2025 WL 1009415, at *5.  The motion is otherwise denied.

## V.     Inspection.

Plaintiff seeks to inspect the bathroom involved in this case to investigate Defendant's alleged reason for firing him, as Plaintiff argues that the students' story of having been struck by the door with such force that she was propelled into a sink is improbable given the bathroom's layout.  Dkt. No. 27 at 2–3.  Defendant objects that the request for an inspection is overbroad, unlikely to lead to relevant information, and unnecessary given the security camera footage and diagram already produced of the relevant areas.  Dkt. No. 28 at 3.

Rule 34(a)(2) provides for the inspection of premises in the course of discovery, subject to the limitations of relevance and proportionality set forth in Rule 26(b).  *See Ehrlich v. Inc. Vill. of Sea Cliff*, 2007 WL 1593211, at *2–3 (E.D.N.Y. May 31, 2007) (quoting Fed. R. Civ. P. 34(a)(2), 26(b)).  After the 1970 amendments to Rule 34, "need" was expressly eliminated as a requirement for inspection, in favor of the broader "relevance" standard for discovery generally. *See Cuno Inc. v. Pall Corp.*, 116 F.R.D. 279, 281 (E.D.N.Y. 1987).  A Rule 34 inspection is warranted when "the degree to which the proposed inspection will aid in the search for truth" outweighs "the burdens and dangers created by the inspection."  *New York Assoc. for Retarded Children v. Carey*, 706 F.2d 956, 961 (2d Cir. 1983).

Plaintiff is entitled to an inspection of the girl's bathroom where the October 2022 incident occurred, the adjoining hallway, and Plaintiff's former classroom.  Plaintiff has properly alleged that the layout of the bathroom is relevant to the plausibility of the bathroom incident as described by the students and therefore as to whether the school administrators believed the account of the students or rather acted on the basis of pretext.  The school administrators would have been familiar with the location or would have been able to familiarize themselves with the

location.  Thus, the nature of the physical space and location is relevant to the thoroughness and reasonableness of Defendant's investigation and thus to whether the termination decision was based on pretext.

Defendant has not shown that the surveillance footage in combination with the diagram provided obviate Plaintiff's request, because the footage concededly does not capture the interior of the bathroom, and Plaintiff is entitled to examine aspects of the physical space that would not be captured in a simple schematic.  Because Plaintiff has stipulated that the inspection need not occur during school hours and may take place at a time and date agreeable to Defendant, the intrusion on Defendant and Defendant's staff and student body is minimal.

## VI.    Mooted Requests

Plaintiff requests that Defendant produce two video recordings of the bathroom incident in their original, unaltered format as well as the complete footage of the incident in question; documents regarding the reassignment of Plaintiff's responsibilities and duties to his assistant after he was fired; and documents regarding Defendant's financial condition.  Dkt. No. 27 at 2–3. Defendant claims that these issues have been resolved, which Plaintiff has not disputed. Accordingly, Plaintiff's motion to compel with respect to these issues is denied as moot.

## VII.    Electronic searches

Plaintiff seeks to have Defendant uses an additional set of search terms provided by him and designed to uncover documents concerning other allegations of discrimination and/or retaliation against Defendant, comparator evidence, McConkey's protected complaints, and discriminatory comments.  Dkt. No. 27 at 3.  He complains that Defendant has asserted that the search terms are overbroad without providing hit counts to support the claim of overbreadth.  *Id.* Defendant has agreed to provide a hit count.  Dkt. No. 28 at 3.  Accordingly, Plaintiff's motion is

denied without prejudice to renewal should the parties not be able to reach agreement after a further meet and confer regarding the search terms.

## CONCLUSION

The motion is granted in part and denied in part. The Clerk of Court is respectfully directed to close Dkt. No. 27.

SO ORDERED.

Dated: July 14, 2025
      New York, New York

                            LEWIS J. LIMAN
                     United States District Judge

11